RICHARD SISSON, JR., administrator,[1] & others[2] vs. DAVID W.
LHOWE & another.[3]

Suffolk. April 7, 2011. - October 6, 2011.

Present: IRELAND, C.J., SPINA, CORDY, GANTS, & DUFFLY, JJ.

*Repose, Statute of. Medical Malpractice,* Complaint. *Wrongful Death. Negligence,* Statute of repose, Medical malpractice, Wrongful death. *Practice, Civil,* Claim barred by statute of repose, Wrongful death, Complaint, Amendment of complaint.

A Superior Court judge erred in dismissing, as time barred, a claim for wrongful death that the plaintiffs had added as an amendment to their complaint for medical malpractice following the death of the plaintiffs' decedent more than seven years after the last alleged act of malpractice, where the term "action" in G. L. c. 260, § 4, the statute of repose, could be seen as referring to the group of operative facts that gave rise to the complaint for medical malpractice, such that related claims based on injury resulting from the same alleged malpractice need not have been made when the original action was commenced, but must be made during the pendency of that action; where such a view would be consistent with the purpose the Legislature sought to achieve when it enacted the statute of repose; and where, in the circumstances of this case, none of the purposes of the statute of repose would be served by dismissing the plaintiffs' wrongful death claim, in that the additional costs associated with defending stale claims do not manifest where a plaintiff dies during the pendency of a malpractice suit and the parties proceed to trial on a claim of wrongful death rather than personal injury. [707-716] SPINA, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on February 27, 2006.

A motion to dismiss certain claims was heard by *Nancy S. Holtz,* J., and entry of separate and final judgment was ordered by her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

[1] Of the estate of Dawn Sisson.

[2] Richard Sisson, Jr., individually and as parent and next friend of Richard Sisson, Third, Andrew Sisson; and Emily Sisson.

[3] Massachusetts General Physicians Organization, Inc.

*John P. Barylick* for the plaintiffs.

*Charles P. Reidy, III,* for the defendants.

DUFFLY, J. Following the death of Richard Sisson Jr.'s wife, Dawn Sisson, from osteosarcoma, the plaintiffs amended their complaint for medical malpractice in a pending action against the defendants, Dr. David W. Lhowe and Massachusetts General Physicians Organization, Inc., to include a claim for wrongful death. The wrongful death claim in the amended complaint was dismissed as time barred pursuant to G. L. c. 260, § 4 (statute of repose), and the plaintiffs appealed. We transferred the case to this court on our own motion. Although we have had several opportunities to discuss the statute of repose in the context of claims for medical malpractice, we have not previously addressed the question whether a plaintiff may, after the period of time set forth in the statute of repose has expired, amend a complaint alleging medical malpractice to add a claim for wrongful death where the underlying complaint alleged medical malpractice resulting in injury including expected premature death. We answer in the affirmative and conclude that the wrongful death claim should not have been dismissed.

1. *Background.* The plaintiffs allege that Lhowe provided substandard medical care to Dawn between January 26, 1999, and November 16, 1999. On February 27, 2006, Sisson, Dawn,[4] and their three children filed a complaint in the Superior Court against Lhowe and his employer, Massachusetts General Physicians Organization, Inc. The complaint alleged that as a direct and proximate result of Lhowe's negligence, Dawn suffered injuries "including, but not limited to, expected premature death from metastic osteosarcoma." It further alleged that Lhowe's negligent medical care and treatment of Dawn caused her continuing suffering and mental and physical pain, as well as lost earnings, future lost earnings, and other future medical and care expenses. The plaintiffs claimed that Lhowe failed to inform Dawn of the medical options available to her, and but for this failure she would have avoided the injuries she sustained. Finally, the complaint asserted that as a result of Lhowe's conduct, Sisson has suffered, and will in the future suffer, a loss of his wife's

---

[4]Because they share a surname, we refer to Dawn Sisson by her first name and to Richard Sisson, Jr., as Sisson.

consortium; a claim for loss of consortium was made also on behalf of the couple's children.

Dawn died on March 29, 2007, while the action was pending. On March 28, 2008, the plaintiffs amended the complaint, adding Sisson as administrator of Dawn's estate, and adding wrongful death claims. Trial was scheduled to begin in January, 2010. Prior to trial, the defendants filed a motion in limine seeking to preclude the plaintiffs from proceeding on a claim for wrongful death on the ground that the repose period had expired on November 16, 2006, seven years after the last incident of alleged negligent conduct occurred, and prior to Dawn's death. That motion was allowed. The parties filed a joint motion to sever the loss of consortium claims from the wrongful death claims; that motion also was allowed. Thereafter, on the defendants' motion, the wrongful death claims were dismissed.

2. *Discussion.* "We review the allowance of a motion to dismiss de novo." *Curtis* v. *Herb Chambers I-95, Inc.*, 458 Mass. 674, 676 (2011). "We accept as true the allegations in the complaint and draw every reasonable inference in favor of the plaintiff." *Id.*, citing *Harhen* v. *Brown*, 431 Mass. 838, 845 (2000), and *Warner-Lambert Co.* v. *Execuquest Corp.*, 427 Mass. 46, 47 (1998). In this case we consider whether, as a matter of law, the plaintiffs' wrongful death claim was barred by the statute of repose applicable to malpractice actions.

The plaintiffs' primary argument is that the plain language of G. L. c. 260, § 4, applies to any "action" for malpractice, and on the timely filing of the original complaint for malpractice (predicated on personal injury to Dawn), the statute's filing requirements were met. Otherwise put, the plaintiffs argue that both the personal injury claim and the wrongful death claim are part of a single action for malpractice that was commenced within the period of repose.

For their part, the defendants contend that, considered in the context of the entire statutory scheme, claims for personal injury and wrongful death are distinct "causes of action," and, because the statute of repose is not subject to tolling, the filing of a complaint within the statute of limitations that alleges personal injury does not toll the period of repose for an action premised on wrongful death. To support their contention that the claims are distinct, the defendants point out that medical malpractice

actions are governed by G. L. c. 231, § 60F, whereas wrongful death actions are governed by a separate statute, G. L. c. 229, § 2; damages as to each claim are differentiated in the statutory scheme, see, e.g., G. L. c. 231, § 60H (placing cap on pain and suffering for personal injury but not wrongful death); and the claims receive differential treatment with respect to interest on damages. See G. L. c. 231, § 60K (excluding from its purview actions for wrongful death). Additionally, the defendants note, a wrongful death action may be brought only by an executor or administrator, and does not accrue until the time of death. See *Gaudette* v. *Webb*, 362 Mass. 60, 63-64 (1972).

a. *Language of the statute.* "[C]onsistent with our general practice of statutory interpretation, we look first to the language of the statute because it is 'the principal source of insight' into the intent of the Legislature." *Bishop* v. *TES Realty Trust*, 459 Mass. 9, 12 (2011), quoting *Norfolk & Dedham Mut. Fire Ins. Co.* v. *Morrison*, 456 Mass. 463, 468 (2010). We interpret terms according to their "ordinary and approved usage." *Chandler* v. *County Comm'rs of Nantucket County*, 437 Mass. 430, 435 (2002), quoting *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934).

General Laws c. 260, § 4, is both a statute of limitation and a statute of repose.[5] With respect to the statute of limitations for medical malpractice, G. L. c. 260, § 4, provides that "[a]ctions . . . for malpractice . . . shall be commenced only within three years after the cause of action accrues . . . ." As to the period of repose, the statute provides that "in no event shall any such action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based." *Id.*

The statute of limitations runs from the date on which a claim accrues — that is, the date on which an individual is injured, or reasonably should have known she was injured, due

---

[5]The relevant portion of G. L. c. 260, § 4, reads:

"Actions of contract or tort for malpractice, error or mistake against physicians, surgeons, dentists, optometrists, hospitals and sanitoria shall be commenced only within three years after the cause of action accrues, but in no event shall any such action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based except where the action is based upon the leaving of a foreign object in the body."

to the negligent acts of her physician. The date a plaintiff "discover[s] his injury is relevant only to the time of accrual for limitations purposes and not to the time the cause of action arose." *Doe No. 4* v. *Levine*, 77 Mass. App. Ct. 117, 120 (2010).

By contrast, the statute of repose focuses on the date a defendant's negligent acts or omissions were alleged to have occurred "regardless of whether a cause of action has accrued or whether any injury has resulted." Black's Law Dictionary 1546 (9th ed. 2009), quoting 54 C.J.S. Limitations of Actions § 4, at 20-21 (1987). See *Klein* v. *Catalano*, 386 Mass. 701, 702 (1982). The date the negligent conduct occurred is the date on which a cause of action arises. See *Doe No. 4* v. *Levine, supra* at 119-120.

To guide our interpretation of the meaning of "action" in this context, we look to the ordinary meaning of the term "action" as employed in the statute, as understood from its dictionary definition. See *Camara* v. *Attorney Gen.*, 458 Mass. 756, 761 n.10 (2011), citing *Boston Professional Hockey Ass'n* v. *Commissioner of Revenue*, 443 Mass. 276, 287 (2005). An "action" or "cause of action" is defined as: "1. A group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person; . . . 2. A legal theory of a lawsuit [e.g.,] a malpractice cause of action." Black's Law Dictionary, *supra* at 251. A "new cause of action" is defined as "[a] claim not arising out of or relating to the conduct, occurrence, or transaction contained in the original pleading." *Id.*

For purposes of the statute of repose, the term "action" can be seen as referring to the group of operative facts that gave rise to the complaint for medical malpractice; this definition does not include the various remedial claims that may be based on those operative facts. Viewed in this light, related claims based on injury resulting from the same alleged malpractice need not have been made when the original action was commenced, although they must be made during the pendency of that action if they are to be considered as having been timely filed for purposes of the statute of repose; in these circumstances, such claims do not create distinct causes of action, but are related to the original claim of injury. That various remedial claims may be made as a result of the negligent act is not the concern of the statute of repose, so long as the original malpractice complaint

(or action) was filed within the seven-year period that begins to run from the date of the negligent acts or omissions.[6]

That claims for recovery based on personal injury, wrongful death, or loss of consortium are not distinct when they derive from the same constellation of facts is supported by decisional law in a variety of contexts. In *Fidler* v. *E.M. Parker Co.*, 394 Mass. 534, 540 (1985), we considered whether a husband could bring a claim for loss of consortium after his wife's claim for personal injury had been resolved against her in an earlier action. The claims arose from the same alleged medical malpractice, although the wife had not yet succumbed to her injuries when the husband brought his loss of consortium claim. Claims for loss of consortium are recognized also as independent of personal injury claims. See *Olsen* v. *Bell Tel. Lab., Inc.*, 388 Mass. 171, 176 (1983). We concluded that although the husband's claim for loss of consortium was technically independent of the wife's claim, it was "based upon the identical facts that led the Federal court to rule against his wife." *Fidler* v. *E.M. Parker Co.*, *supra* at 548. Taking note of the "pervasive interrelationship" between the husband's claim for loss of consortium and the wife's claim for personal injury, we said:

> "In such a situation we look to see what circumstances exist to warrant relitigation of the issues. We conclude that it would be contrary to the policies of judicial economy and of affording litigants repose, to allow [the spouse of the injured plaintiff] to circumvent the preclusive effect of the Federal court judgment only because his claim was technically independent of hers."

*Id.*[7]

In *McKenna* v. *Brassard*, 704 F. Supp. 309, 311 & n.5 (D. Mass. 1989), the United States District Court considered whether

---

[6]If the wrongful death claim had not been filed by the administrator of Dawn's estate within three years after the action accrued, i.e., the date of Dawn's death (or the date when the administrator, "in the exercise of reasonable diligence, should have known of the factual basis for a cause of action," G. L. c. 229, § 2), the claim would have been barred by the statute of limitations, even though it would not have been barred by the statute of repose.

[7]As we discuss, *infra*, these policies of judicial economy and "of affording litigants repose," *Fidler* v. *E.M. Parker Co.*, 394 Mass. 534, 548 (1985), were considered by the Legislature when it enacted the statute of repose.

a wrongful death claim and a personal injury claim were "separate and independent" actions under 28 U.S.C. § 1441(c), for purposes of permitting a party to remove an action to Federal court after the time limitation for removal had expired.[8] In that case, following the death of the injured party, the plaintiff amended a pending claim for personal injury to include a wrongful death count. The question, in the context of removal, was whether the amendment substantially changed the litigation; the court determined that the amount of damages sought after amendment was not substantially different from that sought before the complaint was amended, and the only new fact presented by the additional claim was that of death, which could have been expected. See *id.* at 312.

The court in *McKenna* v. *Brassard, supra,* considered claims for personal injury and for wrongful death based on the same facts as not separate and independent for purposes of removal, even though more than one wrong may have been implicated.[9] In denying removal, the court concluded that "[t]he initial complaint fairly apprised defendants of the nature of the litigation. . . . No significant change has occurred in this litigation to revive the already waived right to remove." *Id.* See *Ellis* v. *Ford Motor Co.,* 628 F. Supp. 849, 851-852, 855-858 (D. Mass. 1986), quoting Restatement (Second) of Judgments § 46 comment c (1982) (where court, in considering application of collateral estoppel principles, noted "substantial coextensiveness of the social and economic interests" between personal injury claim and wrongful death claim premised on same incident, and precluded wrongful death beneficiaries from relitigating liability of defendant).

---

[8]Removal is appropriate when, as here relevant,

> "[A] separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates."

28 U.S.C. § 1441(c) (2006).

[9]Personal injury and wrongful death claims each seek to remedy a different wrong; the former for losses sustained to the injured person and the latter for losses sustained to the family of the deceased. See *Ellis* v. *Ford Motor Co.,* 628 F. Supp. 849, 855 (D. Mass. 1986).

b. *Purpose and history of statute.* "[W]e do not consider the language of the statute alone, but seek to ascertain the intent of the Legislature in enacting the statute 'from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished.' " *Bishop* v. *TES Realty Trust*, 459 Mass. 9, 12 (2011), quoting *Halebian* v. *Berv*, 457 Mass. 620, 628-629 (2010). "The object of a statute of repose, as stated by Justice Story, 'is to suppress fraudulent and stale claims from springing up at great distances of time, and surprising the parties, or their representatives, when all the proper vouchers and evidences are lost, or the facts have become obscure, from the lapse of time, or the defective memory, or death, or removal of witnesses.' " *Joslyn* v. *Chang*, 445 Mass. 344, 351 (2005), quoting *Spring* v. *Gray*, 22 F. Cas. 978, 984-985 (C.C.D. Me. 1830), aff'd, 31 U.S. (6 Pet.) 151 (1832).

Our view that claims for personal injury and for wrongful death fall within the statute of repose's definition of what constitutes a malpractice action when those claims are predicated on the same set of operative facts is consistent with the purpose sought to be achieved when the Legislature acted. See *Arbella Mut. Ins. Co.* v. *Commissioner of Ins.*, 456 Mass. 66, 72 (2010) ("we are mindful that a statute's language should be read in accord with the statute's purpose and history").

We have previously had occasion to discuss both the history and legislative purpose behind the enactment of G. L. c. 260, § 4, and G. L. c. 231, § 60D (pertaining to minors).[10] See *Rudenauer* v. *Zafiropoulos*, 445 Mass. 353, 357-359 (2005);

---

[10]General Laws c. 231, § 60D, provides:

"Notwithstanding the provisions of section seven of chapter two hundred and sixty, any claim by a minor against a health care provider stemming from professional services or health care rendered, whether in contract or tort, based on an alleged act, omission or neglect shall be commenced within three years from the date the cause of action accrues, except that a minor under the full age of six years shall have until his ninth birthday in which the action may be commenced, but in no event shall any such action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based except where the action is based upon the leaving of a foreign object in the body."

*Joslyn* v. *Chang, supra* at 348-349; and *Harlfinger* v. *Martin,* 435 Mass. 38, 44-49 (2001). We have noted that the Legislature's primary concern in enacting the statute of repose was to prevent claims of malpractice in circumstances where claims made stale through the passage of time would increase costs to defendants, and thereby to insurers. See *id.* at 44, 49 (Legislature swayed by actuarial experts who testified "that 'meaningful savings would be realized' by amending the statute of limitations, which at that time left insurers and health care providers with no outer limit to later discovered but stale claims" and "the passage of time makes [malpractice actions other than foreign object cases] difficult to defend").

The "genesis of the statute of repose in § 4" appears traceable to our decision in *Franklin* v. *Albert,* 381 Mass. 611 (1980), in which we adopted the modern discovery rule that an action accrues when a plaintiff learns or reasonably should have learned that she has been harmed by a defendant's conduct. *Joslyn* v. *Chang, supra* at 347-348. In *Franklin* v. *Albert, supra* at 619, we stated that it was the Legislature's duty to decide whether the new discovery rule adopted in that case would "fan the medical malpractice crisis by resulting in more claims that [would] in turn contribute to higher insurance premiums and, finally, to curtailment of health care services." In successive years beginning in 1981, the Legislature responded by filing legislation to address the issue. In 1986, the special commission created to investigate the issue reported that "extraordinary premium increases" resulting from a surge in medical malpractice claims was contributing to a "crisis." See *Joslyn* v. *Chang, supra* at 348. "The statute of repose in § 4 was adopted in the wake of this report." *Id.* at 349. See St. 1986, c. 351, § 30.

We have noted also that "[t]he statute of repose was not passed in isolation, but as 'part of a larger, long-term effort to curb the cost of medical malpractice insurance and keep such insurance available and affordable.' " *Joslyn* v. *Chang, supra,* quoting *Harlfinger* v. *Martin, supra* at 43. "It was posited that the initiative would ensure the continued affordability and quality of medical care for the benefit of all citizens of the Commonwealth." *Joslyn* v. *Chang, supra* at 349.[11] The legislative concerns about

[11]See *Harlfinger* v. *Martin,* 435 Mass. 38, 44 n.10 (2001) (major medical

the cost of malpractice claims were connected to problems of proof and changes in the standard of care. See *Harlfinger* v. *Martin, supra* 48-49.

That the Legislature's intent in drafting the statute was, at heart, cost driven is supported by the single exception from the seven-year bar that is included in the statute of repose: a claim "based upon the leaving of a foreign object in the [patient's] body." G. L. c. 260, § 4. Because it is no more costly to defend against a foreign object claim at some unknown later date than it is to defend at a time closer to occurrence, such claims are exempt from the statute of repose. As we noted in *Harlfinger* v. *Martin, supra* at 48, "[p]roblems of proof, and changes in the standard of care, do not plague foreign object cases, no matter how long ago the alleged malpractice occurred. The later discovery of the foreign object is, for all practical purposes, proof of some earlier negligence on the part of a health care provider."

c. *The plaintiffs' wrongful death claim.* In the circumstances presented here, none of the purposes of the statute of repose, discussed *supra*, would be served by dismissing the plaintiffs' wrongful death claim. The additional costs associated with defending stale claims do not manifest where a plaintiff dies during the pendency of a malpractice suit and the parties proceed to trial based on a claim of wrongful death, rather than personal injury. Regardless of whether a claim is for personal injury or wrongful death, where both claims are based on the facts supporting the malpractice action, the liability issue to be resolved remains the same, as will any problems of proof encountered by defendants during a pending action.

Here, as the complaint alleged, the death of Sisson's wife was determined by her physician to be imminent. Moreover, the damages Sisson sought prior to Dawn's death, and those sought after she died, are not substantially different either in nature or amount, and the defendants could have anticipated the potential damages in connection with either claim.[12] In contrast to the circumstances in *Rudenauer* v. *Zafiropoulos, supra* at 357-359,

---

malpractice insurer announced intention to stop writing such insurance in Massachusetts in 1975, spurring legislative study).

[12]Had Dawn survived through trial, and assuming the defendants were found to have been negligent, she could have recovered any future lost wages

there is no concern that the defendants' insurers in this case will be called on to defend medical providers in unexpected lawsuits; the insurers are already on notice of the timely filed claim, the defendants have not yet been adjudged liable, and the relevant insurers have not disbursed any funds. The defendants had already conducted nearly two years of discovery before the plaintiffs amended their complaint, and there is no concern that evidence favorable to the defendants' case will now be difficult to discover. Nor are legitimate concerns of finality disturbed, since the lawsuit was pending when Dawn died.

Further, any concern that a change in the standard of care may occur after the original complaint was filed applies to every malpractice action; few such actions proceed swiftly to trial. See *Rosewell* v. *LaSalle Nat'l Bank*, 450 U.S. 503, 518 (1981). Treating the plaintiffs' claims as deriving from a single action for purposes of the statute of repose gives rise to none of the concerns regarding changes in the standard of care expressed in *Harlfinger* v. *Martin, supra* at 43 n.8.

We disagree with the defendants that *Joslyn* v. *Chang, supra, Rudenauer* v. *Zafiropoulos, supra,* and *Harlfinger* v. *Martin, supra,* control the outcome in this case. The procedural posture of those cases distinguishes them from the present circumstances. In each of those cases no malpractice action had been filed within the period of repose, and we concluded that the Legislature had not intended to permit those plaintiffs to pursue their malpractice claims. See *Rudenauer* v. *Zafiropoulos, supra* at 357 ("the plaintiff no longer has a viable cause of action for any act or omission that occurred seven years before she filed suit"). See also *Joslyn* v. *Chang, supra* at 344-345; *Harlfinger* v. *Martin, supra* at 40. In contrast, considering the Legislature's goal of eliminating costly and stale claims, and the language it used to advance its purpose, the Legislature could not have

___

or loss of earning capacity and future pain and suffering, consistent with G. L. c. 231, § 60F. In such an award for pain and suffering, a jury could have included damages to compensate for the apprehension of imminent death. See *Choicener* v. *Walters Amusement Agency, Inc.*, 269 Mass. 341, 343-344 (1929). Sisson and his children could have recovered lost consortium damages that covered the time period until Dawn's anticipated death. In a claim for wrongful death, a plaintiff may recover for his wife's reasonably expected net income, as well as for lost consortium. See G. L. c. 229, § 2.

intended to treat a claim of expected premature death as separate from a claim of wrongful death where both are based on the same set of facts alleging medical malpractice.

Based on the foregoing, we conclude that a wrongful death claim may be substituted for a personal injury claim only where (1) trial has not commenced; (2) the original complaint alleging malpractice was filed within the statutes of limitation and repose; and (3) the allegations of liability supporting the personal injury claim are the same as those supporting the wrongful death claim.

3. *Conclusion.* The judgment of dismissal is vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

SPINA, J. (dissenting). "A statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action *accrues*" (emphasis added). *Klein* v. *Catalano*, 386 Mass. 701, 702 (1982), citing *Franklin* v. *Albert*, 381 Mass. 611, 618-619 (1980). A statute of repose, however, limits the time after the wrongful act or omission upon which an action may be brought. It is not concerned with the accrual of a cause of action: the injury need not have occurred, much less have been discovered. See *Klein* v. *Catalano, supra*. See also *Rudenauer* v. *Zafiropoulos*, 445 Mass. 353, 357 (2005), quoting *Nett* v. *Bellucci*, 437 Mass. 630, 635 (2002). "The only way to satisfy the 'absolute time limit' of a statute of repose is to 'commence' the action prior to the expiration of that time limit." *Nett* v. *Bellucci, supra*, quoting *McGuinness* v. *Cotter*, 412 Mass. 617, 622 (1992).

In the case before us, the last alleged act of malpractice occurred November 16, 1999. On November 16, 2006, the seven-year statute of repose "abolished" the plaintiffs' wrongful death action, see *Klein* v. *Catalano, supra* at 702 n.3, before it could have been brought: Dawn died on March 29, 2007, four months later. See *Wescott* v. *Henshaw Motor Co.*, 275 Mass. 82, 85 (1931). The plaintiffs "commenced" their wrongful death action on March 12, 2008, by filing a motion to amend the

malpractice action filed by Dawn. See *Nett* v. *Bellucci, supra* at 646-647. This was approximately one year and four months after the wrongful death action was abolished by the statute of repose.[1]

Notwithstanding our decisions that have described the time period as "absolute" within which an action must be filed to avoid the "harsh" results of a statute of repose, *Rudenauer* v. *Zafiropoulos, supra* at 357-358; *Nett* v. *Bellucci, supra* at 635, 647; *McGuinness* v. *Cotter, supra*, the court has inserted an exception into what until today has been a clear, strictly construed, and unambiguous statute. See *Nett* v. *Bellucci, supra* at 646. The Legislature has expressly recognized only one exception in the G. L. c. 260, § 4, statute of repose, namely, "where the action is based upon the leaving of a foreign object in the body." No other exception is recognized. See *Joslyn* v. *Chang*, 445 Mass. 344, 350 (2005). The court has created a second exception in the statute for pending negligence actions arising out of the same incident of malpractice on which the wrongful death claim is based, but only after concluding that the two claims constitute a "single action." *Ante* at 715. The court's rationale is based on an ambiguity that is never identified, and supported by cases that have said that "the Legislature's primary concern in enacting the statute of repose was to prevent claims of malpractice in circumstances where claims made stale through the passage of time would increase costs to defendants and thereby to insurers." *Ante* at 713. The court then reasons that the wrongful death action is not "new" (i.e., it is not stale, having been predicted as a certainty in the original action), and that the "additional costs associated with defending stale claims do not manifest when a plaintiff dies during the pendency of a malpractice suit and the parties proceed to trial based on wrongful death, rather than personal injury." *Ante* at 714.

The court does not identify the ambiguity on which it relies, but appears to have found ambiguity in the words "cause of

---

[1]The parties have not raised the question whether the statute of repose is a jurisdictional matter or an affirmative defense. The court does not address this issue, and neither do I. The States are divided. See, e.g., *Cheswold Volunteer Fire Co.* v. *Lambertson Constr. Co.*, 489 A.2d 413, 420-422 (Del. 1985) (subject matter jurisdiction); *Bergin* v. *Texas Beef Group*, 339 S.W.3d 312, 317 (Tex. Ct. App. 2011) (affirmative defense).

action" in the statute of repose. Relying on *McKenna* v. *Brassard*, 704 F. Supp. 309, 312 (D. Mass. 1989), and *Fidler* v. *E.M. Parker Co.*, 394 Mass. 534, 548 (1985), the court concludes that the medical malpractice action and the wrongful death action are a "single action" for purposes of the statute of repose. *Ante* at 715. These cases do not support that proposition. In *McKenna* v. *Brassard*, *supra*, the court concluded that the amendment of a State court complaint alleging negligence to add a claim for wrongful death after the original period for removal to Federal court had expired was not sufficiently significant to revive the right to remove to the Federal court. The case did not involve the statute of repose, and considerations concerning removal to the Federal court and the application of the statute of repose are altogether different.

In *Fidler* v. *E.M. Parker Co.*, *supra*, the court concluded that a husband's claim of loss of consortium was sufficiently similar to his wife's claims of negligence and breach of warranty (decided against her in an earlier action in Federal court) that the doctrine of collateral estoppel should bar the husband's claim in State court. The court reasoned that relitigation of the "same or similar issues" based on the wife's injuries and the cause of those injuries, *id.* at 543, 547, is "contrary to the policies of judicial economy," even if the claims were independent of one another. *Id.* at 548. That case had nothing to do with the statute of repose. Moreover, collateral estoppel is a judicially created doctrine based largely on interests of judicial economy. The statute of repose is a creature of the Legislature, its scope sweeps broader than judicial economy, and, as discussed below, we generally do not rewrite legislation.

Three years after the *Fidler* case was decided, this court decided *Pobieglo* v. *Monsanto Co.*, 402 Mass. 112 (1988), which held that claims for wrongful death and claims for conscious pain and suffering are "separate causes of action" for purposes of the discovery rule. *Id.* at 118, quoting *Gaudette* v. *Webb*, 362 Mass. 60, 62 (1972). They are "premised upon different theories of recovery and are intended for separate categories of beneficiaries." *Pobieglo* v. *Monsanto Co.*, *supra*. The court emphasized that, although the statute permits joinder of these separate counts in a "*single action*," they are separate claims (emphasis

added). *Id.*, quoting *Gaudette* v. *Webb, supra.* The court's analysis in *Pobieglo* applies equally to the joinder of Dawn's original malpractice action, prosecuted now by the administrator of her estate as substitute plaintiff, and the wrongful death action prosecuted by the administrator of her estate. The court also noted that since 1974, "the Legislature has amended the wrongful death statute of limitations at least twice and has retained the concept of limiting the time from the date of death thereby avoiding the accrual concept." *Pobieglo* v. *Monsanto Co., supra* at 116. The court's use of the term "single action" in its decision today ignores and contradicts its use of that term in the *Pobieglo* case without any explanation. The court also departs from an uninterrupted and long line of cases that has interpreted the statute of repose strictly and without exception.

The court's reliance on staleness as a primary basis for the enactment of the statute of repose and on the fact that the allegations and intended relief are really not "new" is not persuasive. The result in this case should be no different from a case involving a death that occurs more than seven years after the act of malpractice. In such a case, the statute of repose would abolish the cause of action for wrongful death based on medical malpractice, even if the physician were fully aware of the impending claim. A physician who has been alerted to a potential malpractice action well in advance of the running of the statute of repose may consult with counsel immediately and begin preparing the defense. The physician may then obtain dismissal of a late-filed lawsuit even absent the prejudice the court relies on as the legislative basis for enacting the statute of repose. The decision the court announces today cannot be reconciled with *Joslyn* v. *Chang*, 445 Mass. 344 (2005), decided only six years ago, where we recognized that even a physician's fraudulent concealment of his negligence, which necessarily eliminates any possibility of prejudice or the concerns underlying the notion of staleness, faded memories, and lost files, would not justify tolling the statute of repose in light of the clear and "ironclad rule" created by the Legislature. *Id.* at 351.

The court finds further support for ambiguity from the lack of any significant difference in damages sought between the

original and the amended complaints. But damages *are* different, and they may be substantially so: wrongful death actions permit damages not recoverable in an action for negligence, including punitive damages and loss of services. Additionally, the damages are for a different class of beneficiaries, the strength of whose relationships with the decedent are an element of proof and a consideration in damages. The original malpractice action became an asset of Dawn's estate on her death, and that action has not been abolished. It remains viable. The wrongful death action is not just a "substitut[ion]" for the original action, as the court suggests. *Ante* at 716. It is in addition to it. See *Pobieglo* v. *Monsanto Co., supra* at 118.

The court's cost analysis makes it difficult to reconcile cases filed the day the statute of repose abolishes an action for wrongful death with cases filed one day before it would have such an effect. There is ostensibly no cost differential between such cases, at least with respect to costs of defense or difficulty in recalling past events. Cost and staleness are not the only justifications for the statute of repose. "There comes a time when [a defendant] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations . . . ." *Klein* v. *Catalano*, 386 Mass. 701, 709 (1982), quoting *Rosenberg* v. *North Bergen*, 61 N.J. 190, 201 (1972) (interpreting G. L. c. 260, § 2B).

I believe the court improperly has undertaken the legislative function and added a second specific exception based on what the court perceives to be the intent of the Legislature. The Legislature knows how to write exceptions, and it has expressed its intent as to only one exception. See *Joslyn* v. *Chang, supra* at 350. We generally do not rewrite legislation, even after constitutional analysis of a statute. The Constitution permits imprecise fits so long as the Legislature acts rationally and without causing invidious discrimination or encroachment on a fundamental right. See, e.g., *Commonwealth* v. *George*, 430 Mass. 276, 284 (1999) ("Under rational basis review . . . , the Legislature is not required to 'create statutory classifications with surgical precision.' *Opinion of the Justices*, 408 Mass. 1215, 1224 [1990]. 'It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative

measure was a rational way to correct it.' *Zeller* v. *Cantu*, 395 Mass. 76, 84 [1985], quoting *Williamson* v. *Lee Optical of Okla., Inc.*, 348 U.S. 483, 487-489 [1955]"). See *Naples* v. *Commissioner of the Dep't of Employment & Training*, 412 Mass. 631, 635 (1992). See also *Klein* v. *Catalano*, *supra* at 717, quoting *Jewel Cos.* v. *Burlington*, 365 Mass. 274, 279 (1974) ("When legislative authority is exerted within a proper area, it need not embrace every conceivable problem within that field. The Legislature may proceed one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind"). Here, there is no constitutionally impermissible discrimination or encroachment on a fundamental right.

What the court has in fact accomplished is a "relation back" occasioned by the amendment of the complaint. See Mass. R. Civ. P. 15 (c), 365 Mass. 761 (1974). The court has avoided any discussion of the principle of "relation back" of the amended complaint to the original complaint. I believe there are two reasons. First, we have said the principle of "relation back" does not apply to a statute of repose because it "would have the effect of reactivating a cause of action that the Legislature obviously intended to eliminate." *Tindol* v. *Boston Hous. Auth.*, 396 Mass. 515, 519 (1986), quoting *James Ferrera & Sons* v. *Samuels*, 21 Mass. App. Ct. 170, 173 (1985). Accord *Nett* v. *Bellucci*, 437 Mass. 630, 636, 647 (2002). Second, if the principle of relation back did apply, the wrongful death action would be deemed to have been filed on February 27, 2006, when Dawn filed her malpractice action, more than one year before she died and before such an action could have been commenced. Although the court does not discuss "relation back," that is precisely what has occurred here, and under our jurisprudence, that is not permissible. The court's cost analysis is classic "relation back" analysis, applicable to statutes of limitation, not statutes of repose, see *Weber* v. *Community Teamwork, Inc.*, 434 Mass. 761, 785-786 (2001), and such analysis has no place in cases involving a statute of repose. See *Casco* v. *Warley Elec. Co.*, 37 Mass. App. Ct. 701 (1994).

I would hold that the "clear language [of the repose provision of G. L. c. 260, § 4], as supported by its history and purpose, permits no conclusion other than that the Legislature intended

to extinguish malpractice claims seven years after negligent acts or omissions," and the amendment of the complaint should be denied. *Rudenauer* v. *Zafiropoulos*, 445 Mass. 353, 358 (2005). For the foregoing reasons I respectfully dissent.